## Derhamer v. Derhamer

*Bert H. Smyers* and *B. H. Smyers, Jr.*, for libellant.
*B. B. McGinnis* and *Joseph A. Beck*, for respondent.

GRAY, J., January 10, 1935.—The parties in this case were married on December 25, 1917. Libellant is 41 and respondent 45 years of age. At the time of the trial they were living on the same premises but in different buildings thereon. The libel was filed on March 2, 1934, and charges cruelty and indignities. There have been strained relations between these parties since 1928, and since the death of their son in January 1934, their relationship has developed into bitter hostility on the part of each one toward the other.

In her testimony libellant complained of the uncivil treatment of respondent to her family and friends at various times since the marriage; that respondent used vile language to her, and abusive and profane language to others in her presence; that he called her opprobrious names, and at one time struck her on the side of the head, and another time tried to choke her; that at one time he asked a neighbor for the loan of a revolver, suggesting he might want to use it on his wife; and that he once stated that if libellant would not transfer the title of the property in which they lived to him, he would fix it so no one else would get this property; that respondent threatened to kill libellant several times, and used exceedingly vulgar language to her in regard to sex relations, and humiliated her in relation thereto; and that he furnished her very little clothing for 5 or 6 years.

It seems to be clearly established that there was no acute trouble between the

parties until after libellant underwent an operation about 1928. Respondent had pronounced objections to operations and objected to his wife submitting to the operation performed upon her, apparently setting up his judgment against that of the surgeon in the case as to the necessity of doing what was done. Libellant followed the advice of her surgeon rather than that of respondent and on that account incurred respondent's ill-will, which has been evidenced by respondent ever since in a course of conduct which undoubtedly humiliated libellant, and was intended to do so, to such an extent that it became impossible for libellant to live with respondent in normal family relations. One of the witnesses, who is friendly to both parties, indicated this in his testimony when, in substance, he said that respondent never forgave libellant for not following his instructions in regard to the operation and that libellant would not submit to respondent's dictation in the matter.

From the time of the operation to the time of the trial the relations between these two parties became more strained, ending in extreme hostility. Libellant resented respondent's attitude to her, and no doubt contributed to the strain of the relationship between them, but she had ample provocation. Respondent is a very peculiar man. When set upon an idea, he followed it without respect to the consequences to libellant. He compelled her to ask him for money for household purposes and was very close and mean with her about money matters. His conduct in this respect was humiliating and unjustifiable. He compelled libellant to write him notes telling him what food was required. These notes she was required to leave at some appointed place where he would pick them up and oftentimes, with provoking slowness, he would buy the food, or as much of it as he thought necessary, and leave it for her to prepare. For long periods of time there was no conversation between libellant and respondent, and this wholly unnatural method of living together was undoubtedly exceedingly humiliating to the libellant. When the parties did eat together at the family table, respondent would not engage in conversation with libellant and others at the table except in a very uncivil way. On an occasion when libellant was injured in an automobile accident, respondent treated her in a very harsh manner, paid no attention to her, and did not secure her a physician for several weeks, resulting in an injury to her from which she still suffers.

The climax of respondent's hostile treatment of libellant occurred when their son became ill about Thanksgiving of 1933. Whether respondent deliberately neglected his son out of spite towards libellant, or because of his bigoted views in regard to medical attention to his son, we need not decide, but the fact is that a fine boy, about 13 years of age, lost his life due to the neglect of respondent to secure his son competent medical attention, and it is a fact that during the course of this heart-rending experience respondent treated libellant with cold-blooded indifference, which was evidently born of his spitefulness toward her. We will not rehearse the harrowing details of the neglect of his son by respondent against the frantic protestations of libellant. It is enough to say that it is clearly established that the boy lost his life because he did not have proper and competent medical and surgical attention when it was discovered he had appendicitis. Any normal parent would have known that the medical attention which respondent procured for his son in the first place was not adequate or competent, but that it endangered his son's life, as it actually caused his death, competent surgeons having been called in when it was too late to save the boy's life.

The case is so serious that we feel called upon to submit the testimony in regard to it to the district attorney of Allegheny County for his judgment as to

whether criminal prosecution should not be instituted, and will also send a copy to the Allegheny County Medical Society.

Respondent in one form or another denied, or attempted to deny, all the testimony of the libellant and her witnesses, but it was not difficult to read between the lines of his testimony that he had pursued a cruel course of conduct towards his wife, begotten of ill-will and an intention to force her to submit to his ideas of life and to break her will. He offered the testimony of a number of witnesses who testified to friendly relations between libellant and respondent for a number of years after their marriage, but practically all of them agreed that from 1928 on there was a change of attitude on the part of both libellant and respondent and that thereafter there was an abnormal relationship between them.

A divorce should be granted to libellant.